**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MONITRONICS INTERNATIONAL, INC.,<br>d/b/a BRINKS HOME,<br><br>　　　　　Defendant. | Civil Action No. 2:22-cv-00432<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IOT INNOVATIONS LLC ("IOT Innovations" or "Plaintiff") files this complaint against MONITRONICS INTERNATIONAL, INC. d/b/a Brinks Home ("Brinks Home" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.　　This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D**, **Exhibit E**, and **Exhibit F** respectively:

| | **U.S. Patent No.** | **Title** |
|---|---|---|
| A. | 6,920,486 | Method And Apparatus For Enabling Synchronizing Data In Different Devices Having Different Capabilities And Unmatched Data Fields |
| B. | 7,263,102 | Multi-Path Gateway Communications Device |
| C. | 7,280,830 | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network |
| D. | 7,304,570 | Methods, Systems, And Computer Program Products For Providing Context-Based, Hierarchical Security For A Mobile Device |
| E. | 7,567,580 | Edge Side Assembler |
| F. | RE44,742 | Dynamic Message Templates And Messaging Macros |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    Monitronics International, Inc. d/b/a Brinks Home is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1990 Wittington Place, Dallas, Texas 75234.

5.    Brinks Home may be served through its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Inc. located at 211 E. 5th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-5 as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.    Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii)

regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10.     Specifically, Brinks Home intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

11.     Brinks Home maintains regular and established places of business in this District.

12.     Brinks Home offers products and services and conducts business in the Eastern District of Texas.  For example, and as depicted below, Brinks Home promotes, advertises, and provides its services within this District:

## Americans Announce Brinks Home as Official Home Security Partner

Elisa Schmitt
Oct 28, 2022

**Allen/Dallas, TX** – The Allen Americans Professional Hockey Club, 4-time league champions and affiliate of the NHL's Ottawa Senators, are proud to announce a new partnership with Brinks Home™. The agreement will make DFW-based Brinks Home the official home security partner of the Americans, and will include multiple fan-engagement benefits for Season Ticket Members throughout the season.

"We're thrilled to have Brinks Home as a partner moving forward," said Jeff Wodka, Americans Vice President of Sponsorship Sales. "We've been nothing but impressed with their cutting-edge products and services and we encourage all of our fans who are considering home security to reach out to Brinks Home."

As part of the agreement, Brinks Home will have multiple activations throughout the CUTX Event Center, including the all new Brinks Home™ Security Zone. The Brinks Home Security Zone will be the new name for the east side of the rink, the side that the Americans defend twice. Brinks Home will also have a presence at several Americans games, offering fans opportunities to win prizes and learn more about the benefits of their products and services.

**Exhibit G**.

13.     In addition, to conduct this business, Brinks Home employs a number of individuals within this District, including but not limited to, corporate recruiters, account managers, security consultants, systems engineers, and technical support.  These individuals' employment with Brinks Home is conditioned upon and based on their residence and continued residence within the District to further the specific infringing business activities of Brinks Home within the District.

14.     On information and belief, Brinks Home also leases, owns, stores, services, and/or operates real and personal property including, but not limited to, vehicles and other equipment, and provides and funds office space and equipment, vehicles, and other equipment to its employees, exclusive and non-exclusive contractors, agents, and affiliates, within this District for the specific purposes of offering, provide, and/or support its infringing products and services within this District.

15.     Brinks Home's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Brinks Home affirmatively acted to make permanent operations within this District to service its customers.  *See In re Cray Inc*., 871 F.3d 1355, 1365–66 (Fed. Cir. 2017) (citing *In re Cordis Corp*., 769 F.2d 733, 736 (Fed. Cir. 1985)).  Brinks Home employs and contracts with those employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., with the specific requirement that those individuals and entities maintain a presence in the District to service customers within the District.  At least through these employees, Brinks does its business in this District through a permanent and continuous presence.  *See In re Cordis Corp*., 769 F.2d 733, 737 (Fed. Cir. 1985).

16.     Brinks Home ships and causes to be shipped into the District infringing products and

materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within the District.

17.    Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Instrumentalities and inducement of third parties to use the Accused Instrumentalities.

## THE ACCUSED INSTRUMENTALITIES

18.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-17 as though fully set forth in their entirety.

19.    Based upon public information, Brinks Home owns, operates, advertises, and/or controls the website https://brinkshome.com/ through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.  *See* **Exhibit H.**

20.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems.  *See* **Exhibit I**.

21.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems, which includes, but is not limited to, Brinks Home Hubs, Brinks Home IQ 2.0 Control Panels, Brinks Home Motion Sensors, Brinks Home Outdoor Cameras, Brinks Home Indoor Cameras, Brinks Home Doorbell Cameras, Brinks Home Door and Window Sensors, Brinks Home Garage Door Sensors, Brinks Home Glass Break Sensors, Brinks Home App and associated phone apps and website functionality, and associated hardware, software and applications (the "Accused Instrumentalities").  *See* **Exhibit J; Exhibit K.**

22.    Defendant also instructs its customers, agents, employees, and affiliates regarding how

to use the Accused Instrumentalities for home security and control.

23.    For these reasons and the additional reasons detailed below, the Accused Instrumentalities practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,920,486

24.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-23 as though fully set forth in their entirety.

25.    The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 6,920,486 (the "'486 patent") on July 19, 2005, after full and fair examination of Application No. 10/153,170, which was filed on May 20, 2002.  *See* **Ex. A**.

26.    IOT Innovations owns all substantial rights, interest, and title in and to the '486 patent, including the sole and exclusive right to prosecute this action and enforce the '486 patent against infringers and to collect damages for all relevant times.

27.    The claims of the '486 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of synchronizing data stores on different devices having data stores that differ in respect to one or more data components.

28.    The written description of the '486 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29.    Defendant has directly infringed one or more claims of the '486 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

30.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '486 patent.

31.    For example, Defendant, using the Accused Instrumentalities, performs a method by which a first client data store hosted by a first client device is synchronized with respect to a second client data store hosted by a second client device by synchronizing the two client data stores with respect to a server data store hosted by a server device, the server having an established connection with the client devices, the two client data stores each including various data fields, the method characterized by: forming structure information indicative of the structure of the two client data stores in respect to at least one data field of the first client data store, for which the second client data store does not have either one corresponding data field or does not have two or more data fields that in combination correspond to the at least one data field; detecting by the server or the first client device a use of the at least one data field in the first client data store; and setting a correspondence of the at least one data field in the first client data store in respect to the second client data store, in order for the at least one data field in the first client data store to be used by the second client.

32.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '486 patent by inducing others to directly infringe the '486 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '486 patent by providing or requiring use of the Accused Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '486 patent, including, for example, claim 1 of the '486 patent.  Such steps by Defendant included, among other

things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '486 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '486 patent. Defendant's inducement is ongoing.

33.    Defendant has also indirectly infringed by contributing to the infringement of the '486 patent. Defendant has contributed to the direct infringement of the '486 patent by their personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '486 patent, including, for example, claim 1 of the '486 patent. The special features constitute a material part of the invention of one or more of the claims of the '486 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

34.    Defendant had knowledge of the '486 patent at least as of the date when they were notified of the filing of this action.

35.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IOT Innovations' patent rights.

36.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

37.    Defendant's direct infringement of one or more claims of the '486 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IOT Innovations' rights under the patent.

38.    IOT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '486 patent.

39.    IOT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IOT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

40.    IOT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IOT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '486 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors IOT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IOT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,263,102

41.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-40 as though fully set forth in their entirety.

42.    The USPTO duly issued U.S. Patent No. 7,263,102 (hereinafter, the "'102 patent") on August 28, 2007 after full and fair examination of Application No. 10/306,848 which was filed on November 27, 2002. *See* **Ex. B**. A Certificate of Correction was issued on January 1, 2013. *See*

*id.*

43.     IOT Innovations owns all substantial rights, interest, and title in and to the '102 patent, including the sole and exclusive right to prosecute this action and enforce the '102 patent against infringers and to collect damages for all relevant times.

44.     The claims of the '102 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of virtual personalized network setting.

45.     The written description of the '102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

46.     Defendant has directly infringed one or more claims of the '102 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

47.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '102 patent.

48.     For example, the Accused Instrumentalities, used by Defendant, provide a personal digital gateway, comprising: a database of personal digital gateway rule-based profiles for communicating data to a communications device selected from a plurality of communications devices, the rule-based profile categorizing the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; a processor communicating with a

memory device, the processor associating a personal digital gateway rule-based profile with the selected communications device; and a communications interface between the personal digital gateway and, the selected communications device, wherein the personal digital gateway enables communication of the data with each communications device of the plurality of communications devices, the plurality of communications devices comprising at least one of a wireless communications device, a mobile phone, a wireless phone, a WAP phone, an IP phone, a satellite phone, a computer, a modem, a pager, a digital music device, a digital recording device, a personal digital assistant, an interactive television, a digital signal processor, and a Global Positioning System device, and wherein the memory device is removable from the personal digital gateway.

49.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '102 patent by inducing others to directly infringe the '102 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '102 patent by providing or requiring use of the Accused Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '102 patent, including, for example, claim 1 of the '102 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '102 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary

use of the Accused Instrumentalities by others would infringe the '102 patent. Defendant's inducement is ongoing.

50.    Defendant has also indirectly infringed by contributing to the infringement of the '102 patent. Defendant has contributed to the direct infringement of the '102 patent by their personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '102 patent, including, for example, claim 1 of the '102 patent. The special features constitute a material part of the invention of one or more of the claims of the '102 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

51.    Defendant had knowledge of the '102 patent at least as of the date when they were notified of the filing of this action.

52.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IOT Innovations' patent rights.

53.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

54.    Defendant's direct infringement of one or more claims of the '102 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IOT Innovations' rights under the patent.

55.    IOT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '102 patent.

56.    IOT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IOT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.    IOT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IOT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '102 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors IOT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IOT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,280,830

58.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-57 as though fully set forth in their entirety.

59.    The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004.  *See* **Ex. C**.

60.    IOT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

61.    The claims of the '830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

62.     The written description of the '830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.     Defendant has directly infringed one or more claims of the '830 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

64.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '830 patent.

65.     For example, Defendant, using the Accused Instrumentalities, performs a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

66.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '830 patent by inducing others to directly infringe the '830 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '830 patent by providing or requiring use of the Accused Instrumentalities.  Defendant took active steps,

directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '830 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '830 patent. Defendant's inducement is ongoing.

67.    Defendant has also indirectly infringed by contributing to the infringement of the '830 patent. Defendant has contributed to the direct infringement of the '830 patent by their personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent. The special features constitute a material part of the invention of one or more of the claims of the '830 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

68.    Defendant had knowledge of the '830 patent at least as of the date when they were notified of the filing of this action.

69.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of

others, and thus have been willfully blind of IOT Innovations' patent rights.

70.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

71.    Defendant's direct infringement of one or more claims of the '830 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IOT Innovations' rights under the patent.

72.    IOT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

73.    IOT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IOT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

74.    IOT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IOT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '830 patent.  Defendant's actions have interfered with and will interfere with IOT Innovations' ability to license technology.  The balance of hardships favors IOT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IOT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,304,570

75.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-74 as though fully set forth in their entirety.

76.     The USPTO duly issued U.S. Patent No. 7,304,570 (hereinafter, the "'570 patent") on December 4, 2007 after full and fair examination of Application No. 11/200,611 which was filed on August 10, 2005.  *See* **Ex. D**.  A Certificate of Correction was issued on November 4, 2008. *See id.*

77.     IOT Innovations owns all substantial rights, interest, and title in and to the '570 patent, including the sole and exclusive right to prosecute this action and enforce the '570 patent against infringers and to collect damages for all relevant times.

78.     The claims of the '570 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of context-based, hierarchical security for a mobile device.

79.     The written description of the '570 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80.     Defendant has directly infringed one or more claims of the '570 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

81.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '570 patent.

82.     For example, Defendant, using the Accused Instrumentalities performs a method for providing context-based, hierarchical security for a mobile device, the method comprising: storing a hierarchy of security actions for at least one of protecting data stored on a mobile device and

preventing unauthorized use of the mobile device, the hierarchy including a plurality of security levels, each security level including at least one context-based security action; performing at least one security action associated with a first security level in response to the existence of a first context associated with the first security level; and performing at least one security action associated with a second security level in response to the existence of a second context associated with the second security level.

83.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '570 patent by inducing others to directly infringe the '570 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '570 patent by providing or requiring use of the Accused Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '570 patent, including, for example, claim 1 of the '570 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '570 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '570 patent.  Defendant's inducement is ongoing.

84.     Defendant has also indirectly infringed by contributing to the infringement of the '570

patent. Defendant has contributed to the direct infringement of the '570 patent by their personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '570 patent, including, for example, claim 1 of the '570 patent. The special features constitute a material part of the invention of one or more of the claims of the '570 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

85.     Defendant had knowledge of the '570 patent at least as of the date when they were notified of the filing of this action.

86.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IOT Innovations' patent rights.

87.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

88.     Defendant's direct infringement of one or more claims of the '570 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IOT Innovations' rights under the patent.

89.     IOT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '570 patent.

90.     IOT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and

costs as fixed by this Court under 35 U.S.C. § 284.

91.     IOT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IOT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '570 patent.  Defendant's actions have interfered with and will interfere with IOT Innovations' ability to license technology.  The balance of hardships favors IOT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IOT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,567,580

92.     IOT Innovations repeats and re-alleges the allegations in Paragraphs 1-91 as though fully set forth in their entirety.

93.     The USPTO duly issued U.S. Patent No. 7,567,580 (hereinafter, the "'580 patent") on July 28, 2009 after full and fair examination of Application No. 11/787,977 which was filed on April 18, 2007.  *See* **Ex. E**.

94.     IOT Innovations owns all substantial rights, interest, and title in and to the '580 patent, including the sole and exclusive right to prosecute this action and enforce the '580 patent against infringers and to collect damages for all relevant times.

95.     The claims of the '580 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of methods and systems for a personal digital gateway.

96.     The written description of the '580 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

97.    Defendant has directly infringed one or more claims of the '580 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

98.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '580 patent.

99.    For example, Defendant, using the Accused Instrumentalities, performs method, comprising: identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of communications devices.

100.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '580 patent by inducing others to directly infringe the '580 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '580 patent by providing or requiring use of the Accused Instrumentalities. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '580 patent, including, for example, claim 1 of the '580 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused

Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '580 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '580 patent. Defendant's inducement is ongoing.

101.    Defendant has also indirectly infringed by contributing to the infringement of the '580 patent. Defendant has contributed to the direct infringement of the '580 patent by their personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '580 patent, including, for example, claim 1 of the '580 patent. The special features constitute a material part of the invention of one or more of the claims of the '580 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

102.    Defendant had knowledge of the '580 patent at least as of the date when they were notified of the filing of this action.

103.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IOT Innovations' patent rights.

104.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

105.

106.    IOT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '580 patent.

107.    IOT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IOT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. RE44,742

108.    IOT Innovations repeats and re-alleges the allegations in Paragraphs 1-101 as though fully set forth in their entirety.

109.    The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012.  *See* **Ex. F**.

110.    IOT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

111.    The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template based messaging systems.

112.    The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

113.    Defendant has directly infringed one or more claims of the '742 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

114.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 22 of the '742 patent.

115.    For example, Defendant, using the Accused Instrumentalities, a method comprising: determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.

116.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '742 patent by inducing others to directly infringe the '742 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which

constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '742 patent. Defendant's inducement is ongoing.

117.    Defendant has also indirectly infringed by contributing to the infringement of the '742 patent. Defendant has contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

118.    Defendant had knowledge of the '742 patent at least as of the date when they were notified of the filing of this action.

119.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IOT Innovations' patent rights.

120.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

121.    Defendant's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IOT Innovations' rights under the patent.

122.    IOT Innovations or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

123.    IOT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

124.    IOT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IOT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent.  Defendant's actions have interfered with and will interfere with IOT Innovations' ability to license technology.  The balance of hardships favors IOT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IOT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

125.    IOT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

126.    IOT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IOT Innovations the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others

acting in concert therewith from infringement of the '486 patent, '102 patent, '830 patent, '570 patent, and '742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '486 patent, '102 patent, '830 patent, '570 patent, '742 patent, and '580 patent by such entities;

c.    Judgment that Defendant accounts for and pays to IOT Innovations all damages to and costs incurred by IOT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '486 patent, '102 patent, '830 patent, '570 patent, and '742 patent, and '580 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award IOT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>November 4, 2022</u>          Respectfully submitted,

By: <u>*/s/ C. Matthew Rozier*</u>

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
Travis E. Lynch (GA 162373)*
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

*Attorneys for Plaintiff IOT INNOVATIONS LLC*

*Admitted to the Eastern District of Texas

**List of Exhibits**

A.  U.S. Patent No. 6,920,486
B.  U.S. Patent No. 7,263,102
C.  U.S. Patent No. 7,280,830
D.  U.S. Patent No. 7,304,570
E.  U.S. Patent No. 7,567,580
F.  U.S. Patent No. RE44,742
G.  Webpage: Brinks Home
H.  Webpage: Americans Announce Brinks Home as Official Home Security Partner
I.  Webpage: Brinks Home Security – Smart Home
J.  Webpage: Home Security Systems – Brinks Home
K.  Webpage: Brinks Home Security Camera Systems