IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IOT INNOVATIONS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-0432-JRG-RSP |
| | § | |
| MONITRONICS INTERNATIONAL, INC., | § | |
| d/b/a BRINKS HOME, | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Monitronics International, Inc. d/b/a Brinks Home's ("Brinks Home") Motion to Dismiss for Improper Venue ("Motion"). **Dkt. No. 8**. For the following reasons, the Motion (**Dkt. No. 8**) should be **DENIED**.

### I.   BACKGROUND

Plaintiff IOT Innovations ("IOT") filed suit on November 4, 2022, alleging that certain Brinks Home security system products and services infringe U.S. Patent Nos. 6,920,486, 7,263,102, 7,280,830, 7,304,570, 7,567,580, and RE44,742 (collectively, the "Asserted Patents"). Dkt. No. 1 ("Complaint") at ¶ 21.[1] IOT also asserts that Brinks Home indirectly infringes the Asserted Patents by instructing customers, agents, employees, and affiliates regarding how to use the Accused Instrumentalities. *Id.* at ¶ 22.[2] Brinks Home moves the Court

---

[1] "Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems, which includes, but is not limited to, Brinks Home Hubs, Brinks Home IQ 2.0 Control Panels, Brinks Home Motion Sensors, Brinks Home Outdoor Cameras, Brinks Home Indoor Cameras, Brinks Home Doorbell Cameras, Brinks Home Door and Window Sensors, Brinks Home Garage Door Sensors, Brinks Home Glass Break Sensors, Brinks Home App and associated phone apps and website functionality, and associated hardware, software and applications (the "Accused Instrumentalities")." Complaint at ¶ 21.

[2] "Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Instrumentalities for home security and control." Complaint at ¶ 22; *see id.* at ¶¶ 32 (describing induced infringement), 33 (describing contributory infringement).

1

to dismiss the case under 28 U.S.C. § 1406(a), or in the alternative to transfer this case to the Northern District of Texas.

**II.     LAW**

In patent cases, 28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions" and is not supplemented by the general venue statutes. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citing *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)). Pursuant to 28 U.S.C. § 1400(b), venue lies "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Three elements must be met in order to establish that a defendant has a regular and established place of business in the district: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re: Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

A "physical place" is a "physical, geographical location in the district from which the business of the defendant is carried out." *Id*. at 1362-1363. "[A] 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F. 3d 1338, 1345 (Fed. Cir. 2020) ("*Google II*"); *In re Volkswagen Grp. Am.*, Inc., 28 F.4th 1203, 1208 (Fed. Cir. Mar. 9, 2022) ("*Volkswagen II*"). When determining these requirements, the Federal Circuit has emphasized that "each case depends on its own facts," and "no one fact is controlling." *Cray*, 871 F.3d at 1362, 1366.

When challenged, the plaintiff has the burden of establishing that venue is proper under 28 U.S.C. §1400(b). *In re: ZTE (USA) Inc.,* 890 F.3d 1008, 1013–14 (Fed. Cir. 2018). "A court may decide whether venue is improper based upon (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *AGIS Software v. T-Mobile USA Inc.*, No. 2:21-cv-72-JRG-RSP, 2021 WL 6616856, at *1 (E.D. Tex. Nov. 10, 2021) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)), *R&R adopted*, 2022 WL 178804 (E.D. Tex. Jan. 19, 2022).

### III.    ANALYSIS

#### A. The Complaint Adequately Alleges that Acts of Infringement Occur in This District

The Complaint alleges that Brinks Home "commits acts of infringement from this District, including, but not limited to, use of the Accused Instrumentalities and inducement of third parties to use the Accused Instrumentalities." Complaint at ¶ 17; *see id.* at ¶¶ 10, 12, 16. Nothing more is required to satisfy the requirement that the "acts of infringement" occur within this District when those allegations are uncontested. *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 942 (E.D. Tex. 2018) ("Where a complaint alleges infringement, the allegations 'satisfy the "acts of infringement" requirement of § 1400(b)' '[a]lthough the[] allegations may be contested.'"); *In re: Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) ("The issue of infringement is not reached on the merits in considering venue requirements.").

#### B. IOT Presents Adequate Facts to Show Brinks Home has a Regular and Established Place of Business in This District

Brinks Home argues that venue in this District is improper because IOT's Complaint includes conclusory allegations without any factual support. According to Brinks Home, its employees that reside in this District, its vehicles and "other equipment" in this District, and its

3

"contractors, agents, and affiliates" are each insufficient bases to support a finding of a "regular and established place of business in this District." Motion at 4–11.

IOT responds that Brinks Home has a "regular and established place of business in this District in two separate ways: (1) through its alarm technicians that live and service customers in this District; and (2) through its exercise of the requisite control over authorized representatives[3] and authorized service dealers who are located in and regularly sell, install, and service the Accused Instrumentalities from business locations in this District on behalf of Brinks Home. Dkt. No. 41 ("Response") at 13–23.

The issue before the Court is whether IOT has properly laid venue in this Court. The Court finds that it has.

> i. *Brinks Home has a Regular and Established Place of Business in This District Through its Service Technicians*

The first requirement—that there is a physical place in this District—is met by virtue of several Brinks Home's service technicians who have homes in this District. A "physical place" need not be a "fixed physical presence in the sense of a formal office or store," but there must still be "a physical, geographical location in the district from which the business of the defendant is carried out." *Cray*, 871 F.3d at 1362; *Google II*, 949 F.3d at 1343 (rejecting the argument that a "physical place of business" should focus on owning or leasing real property); *see also Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 1:18-cv-00549 (BKS/CFH), No. 2019 WL 3755446, 2019 U.S. Dist. LEXIS 136436, at *31 (N.D.N.Y. Aug. 7, 2019) (holding Amazon lockers functioning as "a storage unit for deliveries and returns" at a gas station satisfied "physical place" requirement); *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 U.S. Dist. LEXIS 49628, 2018 WL 1478047, at *3 (S.D.N.Y. Mar. 26,

---

[3] The Court need not address the authorized representatives theory as there are sufficient grounds under the remaining theories.

4

2018) (holding that "a shelf containing a piece of Local Access's telecommunications equipment" "is a 'physical place in the district' insofar as it is '[a] building or a part of a building set apart for any purpose.'"); *Seven Networks*, 315 F. Supp. 3d at 954 (holding data servers and the place of the data servers—independently and together—satisfied the "physical place" requirement).

Brinks Home argues that the homes of its alarm service technicians do not constitute "physical places" in this District because their homes are not "places of business." Dkt. No. 44 ("Reply") at 3. Brinks Home contends that the technicians travel to customer homes to perform their business activities, and IOT does not—and cannot—allege that customer homes are the physical places in the district. *Id.* (citing Ex. A, Faber Dep. at 14:19–25; *Cray*, 871 F.3d at 1362–63; *Westport Fuel Sys., Canada v. Ford Motor Co.*, 2:21-cv-457-RWS-RSP, 2022 WL 7376137, at *3-4 (E.D. Tex. Aug. 22, 2022)). Brinks Home also challenges the use of the leased vehicles to support the "physical place" analysis, and argues that any equipment is stored within the vehicles rather than *inside* the technician's homes. Reply at 4–5.

Here, the technicians are Brinks Home employees assigned to a particular market, and several of them live and work within this District. Response Ex. 2 (Faber Depo.), at 18:21-19:23, 89:19-91:13. Brinks Home provides them each with a vehicle and between $10,000–$20,000 of Accused Products that they store at their respective homes. Response Ex. 2 (Faber Depo.), at 14:10-25, 52:13-22, 53:23-54:3, 82:2-83:10, 88:9-91:13; Response Ex. 5 (Faber Depo. Ex. 7 – BrinksHome_0000207). They do not report to a corporate office. Response Ex. 2 (Faber Depo.), at 89:3-18. Instead, the technicians travel from their homes to customers for service calls in this District by bringing their company vehicles and Accused Products from their homes. *Cray*, 871 F.3d at 1362 (relevant considerations include "the storing of materials at a place in the district so

5

that they can be distributed or sold from that place"); *Cordis*, 769 F.2d 733, 735, 737 (Fed. Cir. 1985) (holding venue proper in district where defendant's employees stored defendant's "literature, documents and products" in their in-district homes rather than in a separately leased or owned warehouse of the defendant); *Rensselaer*, 2019 U.S. Dist. LEXIS 136436, at *20 ("In some instances, 'employees' homes'…where inventory is stored may constitute places of business."); *see also In re Monolithic Power Sys., Inc.*, 50 F.4th 157, 160 (Fed. Cir. 2022) (denying mandamus as to district court holding venue was proper because Monolithic's employee stored and used a variety of employment-specific tools within his home to conduct tests for a Monolithic in-district customer); *see also Rensselaer*, 2019 U.S. Dist. LEXIS 136436, at *20 ("In some instances, 'employees' homes'…where inventory is stored may constitute places of business.").

The second requirement—that the physical place be a regular and established place of business—is also satisfied by virtue of Brinks Home's service technicians who have homes in this District. To satisfy the "regular and established" requirement, a business may be "regular" if it operates in a steady, uniform, orderly, and methodical manner, and "established" if it is not transient but instead settled certainly or fixed permanently. *Cray*, 871 F.3d at 1362 (internal quotations omitted).

Brinks Home argues that the technicians' homes are not "regular and established places of business," as required, because they are not places of business. Reply, Dkt. No. 44 at 4. According to Brinks Home, alarm service technicians can move residences in or out of the District without permission and the technician work is mobile so there is no "regular and established" business activity at the technician homes. *Id.*

While Brinks Home does not require that its alarm service technicians live in a specific location, that has more to do with whether the technician homes are "of the defendant" rather than "regular and established." Brinks Home has over 14,700 customers in this District. Response Ex. 1 (BrinksHome_0000015). The alarm service technicians perform services at those customer locations. Each night, the technicians store leased, company vehicles and more than ten thousand dollars of equipment and inventory (Accused Products) at their homes in this District. The technicians travel from their homes—using their leased, company vehicles—to customer homes or businesses in this District to deliver, install, and repair the Accused Products. Response Ex. 2 (Faber Depo.), at 14:10-25, 52:13-22, 53:23-54:3, 88:9-91:13. Consequently, steady, uniform, orderly, and methodical business is carried out in this District—commencing and concluding from the service technician homes in this District with customer site visits in this District in between.

The third requirement—that the physical regular and established place of business be "of the defendant"—is also satisfied by Brinks Home's actions regarding its service technicians who have homes in this District. To assess whether a regular and established place of business is "of the defendant," the Federal Circuit explained that "the defendant must establish or ratify the place of business," and that certain considerations include "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Cray* at 1363. Further, a "defendant's representations that it has a place of business in the district are relevant to the inquiry" where the defendant "actually engage[s] in business from that location." *Id.* at 1363– 64. "A further consideration for this requirement might be the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues." *Id.* at 1364; *see also ZTE*, 890 F.3d at 1015 ("To be

complete, the district court must give reasoned consideration to all relevant factors or attributes of the relationship in determining whether those attributes warrant [a place] being deemed a regular and established place of business of [the defendant].").

Brinks Home argues that the service technician homes are not places "of the defendant" because it contends there is no evidence establishing any factors *Cray* considered to evaluate whether an employee's home is a place of business "of the defendant" Reply at 6–7.

Here, in contrast to *Cray*, IOT provides evidence showing that having a presence in the Eastern District of Texas is important to Brinks Home's business. 871 F.3d at 1365 (identifying relevant considerations to the "of the defendant" inquiry are whether Brinks Home "played a part in selecting the place's location, stored inventory or conducted demonstrations there," or "believed a location within the [District] to be important to the business performed."). Since Brinks Home products and services include installations and maintenance of hardware at customer locations, Brinks Home's business is directly and inextricably linked to the geographic territory it can serve. Its assignment of alarm service technicians to particular markets, such as the Dallas-Fort Worth area demonstrates that importance. *See* Response Ex. 2 (Faber Depo.), at 18:21-19:23, 89:19-91:13.

While service technician employment may not be expressly conditioned on residing in a specific district, there is no question that Brinks Home's "business specifically depend[s] on employees being physically present at places in the district." *Cray*, 871 F.3d 1365 (citing *Cordis*, 769 F.3d at 736–37). Further, Brinks Home has affirmatively acted to make permanent operations within this District to service its 14,700 customers here. *Id.* (*Cordis*, 769 F.3d at 736–37). Furthermore, the mere presence of two remote employees working from home in New York constituted a "regular and established place of business" for venue where all employees worked

from their homes. *RegenLab USA LLC v. Estar Technologies Ltd.*, 335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018) (citing *Cray*, 871 F.3d at 1363 n.1) (noting that where "a defendant has a business model whereby many employees' homes are used by the business as a place of business of the defendant" is pertinent to determining the propriety of venue)

As previously mentioned, the service technicians store a leased vehicle and tens of thousands of dollars of Brinks Home equipment at their homes that are taken directly to customer locations for installation and servicing. Those activities not only demonstrate the technicians' homes are places of business, but that those places of business are "of the defendant." *Cordis*, 769 F.2d at 735 (holding venue was proper where defendant used its employees' homes to store literature, documents, products, and sometimes inventory that the employees then took directly to clients, as well as engaging in secretarial services physically located in the district); *Monolithic Power*, 50 F.4th 157, 160 (Fed. Cir. 2022) (denying mandamus as to district court holding venue was proper because Monolithic's employee stored and used a variety of employment-specific tools within his home that he used to conduct tests for a Monolithic in-district customer); *RegenLab*, 335 F. Supp 3d at 552 ("The employees did not merely possess those products—their use in New York was part of each employee's job description."). In contrast to Brinks Home argument, the distinction between storing equipment *at* the home rather than *in* the home is inconsequential—particularly in the context of security system products that must be transported and installed at *customer* locations for the security system services.

The cases Brinks Home relies on are distinguishable. *Uniloc USA, Inc. v. Nutanix, Inc.*, No. 2:17-cv-174-JRG, 2017 U.S. Dist. LEXIS 229347, 2017 WL 11527109, at *2-3, 5, 8-10 (E.D. Tex. Dec. 6, 2017) (holding venue improper because, among other reasons, "Nutanix's

9

employees do not regularly maintain physical inventory in this District"); *AGIS Software v. T-Mobile USA Inc.*, No. 2:21-cv-72-JRG-RSP, 2021 WL 6616856, 2021 U.S. Dist. LEXIS 251146, *10-17 (E.D. Tex. Nov. 10, 2021) (holding venue improper based on (1) Lyft vehicles alone because vehicles are "transient" and therefore not "established" under the second requirement, and (2) third-party repair facilities in the district because they were either closed or defendant was a customer rather than principal of that location). Notably, in *AGIS*, there was no evidence that the Lyft drivers stored cars or inventory provided by Lyft at their homes. *See generally* 2021 WL 6616856, 2021 U.S. Dist. LEXIS 251146.

In sum, IOT presents facts that satisfy the question *Cray* left open such that venue is proper within this District. Nevertheless, venue is also proper under an agency theory.

      ii. *Brinks Home has a Regular and Established Place of Business in this District Through Its Authorized Service Dealers Acting as Agents*

"An agency relationship is a 'fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.'" *Google II*, 949 F.3d at 1345 (quoting Restatement (Third) of Agency § 1.01). "The essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Id.* (citing *Meyer v. Holley*, 537 U.S. 280, 286, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)) (alterations in the original).

To establish an agency relationship, the principal must have "interim control" over the agent's work. *Volkswagen II*, 28 F.4th at 1209 (citing *Google II*, 949 F.3d at 1345–46) ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents"). The Federal Circuit

10

recognizes agency relationships that are narrow in scope. *Id*. (citing *Google II*, 949 F.3d at 1346). Thus, to constitute "a principal's agent for a particular purpose" the movant must rely on interactions within the scope of the agency relationship. *Id*.

Here, Brinks Home uses "authorized service dealers" to originate and serve Brinks Home customers. Response Ex. 2 (Faber Depo.), at 26:15-25, 33:5-34:25, 70:2-9, 90:19-92:4, 101:22-102:7. To become an authorized service dealer, Brinks Home and the interested party sign a "Maintenance Service Agreement" in which the authorized service dealer agrees to install, service, and maintain Brinks Home's new and existing customers' security systems. *Id.* at 101:5–102:7. The authorized service dealer may also sign an "Alarm Monitoring Purchase Agreement," in which the authorized service dealer originates new customers and Brinks Home agrees to buy those agreements from the authorized service dealer. *Id.* Authorized service dealers are also required to comply with Brinks Home branding standards. *Id.* at 103:2-104:1.

Preventative Security Systems, Inc. and SmartTech Home Solutions, LLC are two Brinks Home authorized service dealers (collectively, the "Authorized Service Dealers") in this District. Response Ex. 3 (Faber Depo. Ex. 4), at Rog #4; Response Ex. 2 (Faber Depo.), at 96:13-101:3. The Authorized Service Dealers originate customers for Brinks Home and perform installation and maintenance services for Brinks Home in this District. Response Ex. 2 (Faber Depo.), at 96:13-101:3; Response Ex. 6 (Faber Depo. Ex. 10 – BrinksHome0000841); Response Ex. 7 (BrinksHome0000811); Response Ex. 8 (BrinksHome0000836); Response Ex. 9 (BrinksHome0000768); Response Ex. 10 (BrinksHome0000775); Response Ex. 11 (BrinksHome0000787).

The first requirement is met because the Authorized Service Dealers have physical business locations in this District. Response Ex. 12 (BrinksHome0000205) (listing (1) location of

SmartTech in Sulphur Springs, Texas and (2) location of Preventative Security Systems in McKinney, Texas); Response Ex. 13 (showing location in Sulphur Springs, Texas bearing Brinks Home logo on the building and its service vehicle). Brinks Home argues that the Preventative Security Systems location listed is merely a mailing center, not an office. Reply at 7. But Brinks Home concedes the SmartTech location, is a physical place of business in this District.

The second requirement is met because the because the Authorized Service Dealers act as Brinks Home's agents conducting Brinks Home's business from their offices in this District. The contracts between Brinks Home and the Authorized Service Dealers establish (1) Brinks Home has the right to direct and control the Authorized Service Dealers, (2) Brinks Home has manifested consent that Authorized Service Dealers act on its behalf, and (3) the Authorized Service Dealers have consented to act on behalf of Brinks Home. Consequently, the contracts establish that the Authorized Service Dealers are agents of Brinks Home. *Google II*, 949 F.3d at1345. Preventative Security Systems has been an Authorized Service Dealer since 2001 and SmartTech has been an Authorized Service Dealer since 2019. *Seven Networks*, 315 F. Supp. 3d at 957 ("a month-to-month agreement which has endured for years is clearly 'regular and established'").

In determining whether an agent conducts the principal's business at the "physical place of business," the Federal Circuit distinguished "activities, such as maintenance, that are merely connected to, but do not themselves constitute the defendant's conduct of business," from activities such as "production, storage, transport, and exchange of goods and services" that constitute defendant's conduct of business. *Google II* at 1347. The Authorized Service Dealers monitor, install, and repair equipment obtained from and on behalf of Brinks Home for

customers in this District. Those activities involve storage, transport, and exchange of goods and services and are part of Brinks Home's business.

The third requirement is also met because Brinks Home has "established or ratif[ied] the place of business." *Cray*, 871 F. 3d at 1363. In contrast to *Google II* and *Volkswagen II*, Brinks Home exercises the requisite level of control over the Authorized Service Dealers. *Google II*, 949 F.3d at 1346 (excluding "agents' activities, such as maintenance, that are merely connected to, but do not themselves constitute, the defendant's conduct of business…"); *Volkswagen II,* 28 F.4th at 1211–13 (identifying no evidence that Volkswagen or Hyundai provided dealerships with "step-by-step" instructions when selling a car to a consumer or control over how the dealerships perform warranty service). The contracts affect how Authorized Service Dealers perform installations and repairs, what products they can use, the timing and location for customer equipment installations, and compliance with Brinks Home branding. Brinks Home also provides Authorized Service Dealers with an application accessible at the store and at customer sites. The application provides directions to customer locations, and step-by-step instructions to perform their installations, repairs, and other services involving Brinks Home's equipment. Ex. 2 (Faber Depo.), at 19:24-20:17, 62:18-64:11, 70:11-71:5, 73:4-80:9, 96:13-98:7, 100:17-101:3; Ex. 19 (Faber Depo. Ex. 6 – BrinksHome0001589).

Brinks Home argues that the contracts expressly disclaim any agency relationship. Reply at 8. But evidence can and does show that the true relationship between the parties is different than what was contracted. *See Volkswagen II*, 28 F.4th at 1210 (citing 2 Franch. & Distr. Law & Prac. § 9:42 ("Where a contract establishes an independent contractor relationship rather than an agency relationship and does not grant the principal control over the details of the contractor's

13

work, then evidence must be produced to show that despite the contract terms, a true relationship between the parties gave the principal a right of control.")).

In sum, IOT has provided facts demonstrating that venue is proper. Since the facts establish that IOT properly laid venue in this District, the Court need not address the alternative request to transfer to the Northern District of Texas.

## IV. CONCLUSION

It is **RECOMMENDED** that Vivint's Motion to Dismiss for Improper Venue (**Dkt. No 8**) be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 10th day of September, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE